THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LORENZO PEARSON and            )
CLARISSA PEARSON,              )
                               )
         Plaintiff,            )
                               )
v.                             )   Case No. 1:14cv1250-MHT-WC
                               )
THE COMMERCIAL BANK            )
OF OZARK, *et al.*,            )
                               )
         Defendants.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court for review of Plaintiffs' Complaint (Doc. 1) pursuant to the provisions of 28 U.S.C. § 1915(e), as well as several motions filed by Plaintiffs subsequent to the filing of their complaint.  The District Judge referred this case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  Order (Doc. 5).  After a review of Plaintiffs' filings and all supporting evidentiary materials, and for the reasons that follow, the undersigned RECOMMENDS that the complaint be dismissed pursuant to § 1915(e)(2)(B)(ii).

## I.      BACKGROUND

On December 29, 2014, Plaintiffs, proceeding *pro se* and requesting leave of the court to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), filed the instant

complaint.  The specific factual allegations of Plaintiffs' complaint are numerous, mostly conclusory, and, as a whole, difficult to decipher.  There is no doubt that Plaintiffs' complaint concerns what appears to be Defendant Commercial Bank of Ozark's foreclosure on property that Plaintiffs previously owned in Alabama, as well as a subsequent—and perhaps ongoing—ejectment proceeding in state court, and related disputes between Plaintiffs and the defendants they are attempting to sue.  As best the court can tell, Plaintiffs assert that, despite the 2010 foreclosure they reference in their complaint, they somehow retain title to the land at issue,[1] that they have not been justly compensated for use of the land undertaken by the City or Ariton, Alabama, after it was granted an easement by the Bank, and that, furthermore, the Bank is precluded from asserting an ejectment claim against Plaintiffs in state court because of its purported waiver of the claim when it failed to assert ejectment as a counterclaim in some prior state court proceeding.  *See* Compl. (Doc. 1) at 2-3.

## II.   PLAINTIFFS' CLAIMS

Plaintiffs purport to bring numerous claims for relief sounding in both federal and state law.  However, discerning those claims with considerable precision is difficult.  In the "Jurisdiction" portion of the Complaint, Plaintiffs assert that they bring claims for "Declaratory relief . . . pursuant to 28 U.S.C. § 2201 and 2202;" "Constitutional Taking

---

[1]  Plaintiffs' theory of ownership of the land is never fully explicated.  They concede in a separate filing that "Dale County Probate record show Commercial Bank as title holder to said property; at issue in this complaint from a legal foreclosure because of the judgment of the Court in January of 2012."  Pl.'s Mot. To Supp. (Doc. 11) at 2.  Nevertheless, they claim to be "possessors" of the property, and that they somehow have "general and specific title."  Compl. (Doc. 1) at 2.  Notwithstanding the foreclosure alluded to by Plaintiffs, it appears they believe they possess title because they "previously ha[ve] held open and notorious hostile possession of this property for multiple years."  *Id.*

Claim . . . pursuant 5th, Amendment of the United States Constitution. . . .  Also § 1981 and §1983 claims alleging race-based deprivation of full and equal benefit of the laws;" and "Due Process Violation is pursuant the 5th, and 14th Amendment of the United States U.S.C. and Title VII of the Civil Rights Act of 1964, as amended."  Compl. (Doc. 1) at 1. In addition to these purported federal causes of action, Plaintiffs appear to assert numerous state-law tort claims against various defendants, including "civil trespass" (Count Three), "illegal conversion" (Count Four), "negligence" (Count Five), "wantonness" (Count Six), "intentional infliction of emotional distress" (Count Seven), "aiding and abetting tort of outrage" (Count Eight), "nuisance" (Count Nine), "civil conspiracy" (Count Ten), "tortious interference with a business or contractual relationship" (Count Eleven), "illegal ejectment" (Count Twelve), "negligence per se" (Counts Thirteen and Fourteen), and "inverse condemnation" (Count Sixteen).

## III.   DISCUSSION

Plaintiffs have requested leave to proceed *in forma pauperis*, Pls.' Mot. (Doc. 9), which obligates the court to undertake review of their complaint pursuant to the provisions of 28 U.S.C. § 1915(e)(2).  *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) in non-prisoner action).  That statute instructs the court to dismiss any action wherein it is determined that an *in forma pauperis* applicant's suit is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."   § 1915(e)(2)(B)(i)-(iii).  For the reasons that follow, the undersigned finds that Plaintiffs'

complaint is due to be dismissed pursuant to § 1915(e)(2)(B)(ii) because Plaintiffs have failed to state any claim upon which relief could be granted.

The undersigned begins with a discussion of the standards to be applied when assessing the sufficiency of Plaintiffs' pleadings for purposes of review under § 1915(e). Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). In order to survive Defendants' motion to dismiss, then, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a defendant's liability,' however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

4

As a general matter, "[i]n the case of a *pro se* action . . . the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).  However, although district courts must apply a "less stringent standard" to the pleadings submitted by a *pro se* plaintiff, such "'leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).  Thus, "[w]hile a complaint does not need detailed factual allegations, 'a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Simpson v. Zwinge*, 531 F. App'x 985, 986 (11th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, Plaintiffs' complaint, even if liberally construed, must minimally satisfy the dictates of Rule 8(a) of the Federal Rules of Civil Procedure in order to survive review under § 1915(e).  As set out below, the undersigned concludes that the complaint fails to withstand such scrutiny.

The undersigned begins the analysis of the complaint with claims purporting to assert some federal claim or cause of action within this court's federal question jurisdiction.  Plaintiffs allege in Count Fifteen of their complaint a "FAILURE OF DUE PROCESS UNDER 42 U.S.C. § 1983" against Defendants Town of Ariton, Town of Ariton Water and Sewer Authority, Ronnie Danner as Chair of the Water and Sewer

5

Board, and Mayor Jivas Sutton.  Compl. (Doc. 1) ¶¶ 184-200.  In support, Plaintiffs allege that Defendants "acted with deliberate indifference as to the Towns customs and or polices [sic] in doing business with Plaintiff(s), as to a protected constitutional right under the 5th Amendment" and provisions of the Alabama Constitution and Alabama law. *Id.* ¶ 186.  Plaintiffs appear to assert that they were denied due process because the "Town of Ariton has previously used others property in this manner and the providers were compensated for the Town of Ariton use of their land for a sewage dungeon or a similar structure." *Id.*  Plaintiffs thus claim that the "Defendants deprived the Plaintiff(s) of their property interest without just compensation by an illegal easement. . . .  They also knew or should have known the issue of title and possession of the said property were being held in a court of law and or equity for adjudication.  The Defendants action are widespread constitutional violations . . . ." *Id.*  Plaintiffs maintain that they "had a legal right to allow due process to take its course as to their property interest and or possession of any action on the property of which they held possession in real property." *Id.* ¶ 189.

As it is presented in the complaint, Plaintiffs' § 1983 "due process" claim appears to challenge the Town of Ariton's actions in obtaining an easement from the Commercial Bank of Ozark to enter and make use of the property which Plaintiffs claim to own. Plaintiffs appear to believe that they were denied "due process" by Defendants because they were not properly compensated for the Town's use of the land pursuant to the easement.  However, Plaintiffs never clearly allege what additional "process" they were "due" and yet were deprived of by Defendants.  Plaintiffs acknowledge throughout the

complaint that they are parties to an ejectment action in state court.  It thus appears that Plaintiffs believe they were somehow denied due process because the Town obtained the easement from the bank before the ejectment action was fully resolved.

Plaintiffs have failed to state any claim for a due process violation owing to the alleged actions of Defendants.  Defendants could not have violated Plaintiffs' due process rights merely by obtaining an easement from the only entity which, Plaintiffs admit, is the "title holder to said property at issue in this complaint" according to official "Dale County Probate record" and pursuant to a judgment of a state court in 2012.  *See* Pls.' Mot. To Supp. (Doc. 11) at 2.  While Plaintiffs have certainly concocted a bizarre and legally problematic theory of how they own the land despite the "legal foreclosure" carried out by the Commercial Bank of Ozark and any subsequent state court proceeding,[2] there is no authority that due process requires a property owner to obtain ejectment of one party prior to granting an easement to use their land to another party.  Nor can it be considered a due process violation for a municipal entity to enter and make use of land for which it has been granted an easement by the only properly recognized owner of the land in official records.

---

[2]   As alluded to above, Plaintiffs' theory that they retain title to the land despite the foreclosure and subsequent state court judgment is that the Bank somehow waived any claim of ejectment against them when it failed to assert such as a counterclaim in a prior state court proceeding.  *See* Pl.'s Mot. To Supp. (Doc. 11) at 2 ("We presented that in that judgment there was no counterclaims for any other relief and neither did the Bank request any.  Specifically, the ejectment lawsuit they have before the court now is a new claim for additional relief. . . .   Therefore we asserted even if they have title they can't come to Court and file any other action surrounding the same issues and or nucleus of facts of a subsequent suit that was adjudicated on the merits by a court of competent jurisdiction, surrounding the same nucleus of operative facts, and between the same parties.  Furthermore, we asserted under the facts if their claim is barred they can't violate our possession.  Similarly, we assert under applicable Alabama case law any deeds that should have been presented in a prior suit that is mandated by the ARCP/FRCP 13a, is barred now or when they should have been submitted in January of 2012.").

At bottom, the fact that neither the Commercial Bank of Ozark nor the Town of Ariton or any other Defendant recognizes Plaintiffs' attenuated claim of ownership, and that Plaintiffs' theory of ownership has apparently received no traction in any of the state court proceedings prior to their filing of this case, does not constitute a violation by any Defendant of Plaintiffs' due process rights.  Moreover, there is "process" available to Plaintiffs.  They have filed and prosecuted state court actions concerning the property. They have also defended their actions in state court proceedings concerning the property, including contesting the ejectment proceeding against them at the time they filed the instant complaint.  The mere fact that their arguments have not succeeded, and that apparently none of these proceedings have resolved to Plaintiffs' satisfaction, does not, and cannot, suffice as a violation of Plaintiffs' constitutional due process rights.  Rather, "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."  *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). The complaint is utterly devoid of any allegations that state procedures were inadequate or unavailable to protect Plaintiffs' purported interest in the property.  As such, they have failed to state a claim upon which any relief could be granted for any due process violation.

In Count Seventeen of the complaint, Plaintiffs assert a "CONSTITUTIONAL TAKIN [sic] CLAIM PURSUANT 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION."  Compl. (Doc. 1) at ¶¶ 212-34.  In this claim, Plaintiffs appear

generally to repeat their claim that the Town of Ariton's securing an easement from the Commercial Bank of Ozark, and further acting consistent with the terms of the easement, somehow constitutes a taking of their land without just compensation. *Id.* at ¶¶ 215-16. Plaintiffs find support for this theory in the fact that the Town's Attorney, Defendant Danner, provided Plaintiffs with a letter which directed Plaintiffs to cease and desist from their activities, including erecting locked fences and gates, which were inhibiting the Town's use of facilities which it placed on the land pursuant to the terms of the easement granted by Commercial Bank of Ozark, and further threatened Plaintiffs with civil and criminal penalties if they continued to do so. *Id.* at ¶ 217-19. Plaintiffs appear to believe that the fact that Defendants sent them this letter somehow constitutes some sort of concession by the Town that Plaintiffs have a cognizable interest in the property. *See id.* at ¶¶ 218-19 ("This leads one to see there was a conflict between all parties and Plaintiff Lorenzo Pearson needed to be notified by Defendants. Otherwise if there was no rights and or objection by Plaintiff Lorenzo Pearson there would be no need to notice him."). Of course, the reason the letter was sent to Plaintiffs is manifest: the Town wished for Plaintiffs to stop impeding its use and enjoyment of the easement which it had obtained. The Town was not seeking Plaintiffs' blessing to continue using the easement granted to it out of some concern that it might impede on Plaintiffs' rights; it was demanding that Plaintiffs discontinue actively trying to thwart the Town's activities. Nothing in the letter lends any support to any theory that the Town recognized some valid interest of Plaintiffs for which Plaintiffs were entitled to some form of compensation.

9

In any event, as with Plaintiffs' due process claim, which, as set forth above, is virtually identical to the instant "taking" claim, Plaintiffs have failed to state any claim upon which relief could be granted.  First, Plaintiffs would lack standing to assert an unconstitutional taking as to any property which they did not own.  Plaintiffs have offered nothing but extremely attenuated conclusions that they retain some ownership interest in the property while elsewhere they have conceded that the Commercial Bank of Ozark is the "title holder" of the property in Dale County probate records and pursuant to a state court judgment entered in January of 2012.  There can be no taking of Plaintiffs' land if the land was not owned by Plaintiffs and it was not, in fact, "taken" because it was the subject of an easement granted in due course by the lawful owner of the property.

Nevertheless, even indulging Plaintiffs' convoluted theory of continued ownership by virtue of some purported waiver of rights by the Bank and Plaintiffs' supposed "adverse possession," Plaintiffs still have failed to state any claim upon which relief could be granted for any unconstitutional taking.  In order to state such a claim, "the property owner must allege that the governmental action . . . has denied all economically beneficial or productive use of his property.  In other words, the governmental action must have made the property worthless." *Agripost, Inc. v. Miami-Dade Cnty., ex rel. Manager*, 195 F.3d 1225, 1231 (11th Cir. 1999) (quotations and citation omitted).  In addition, Plaintiffs must "allege either that the state law provides him no process for obtaining just compensation (such as an action for inverse condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is

inadequate." *Id.*[3]  In this case, Plaintiff has made no allegation that the subject property has been rendered worthless by the Town's use of its easement, no allegation that state law provides him with no process for obtaining just compensation, and—apart from his implicit complaint that the state courts have not credited his various legal theories described above—no allegation that a state court interpretation of any available process to obtain compensation renders the process inadequate.  Where the complaint is devoid of such allegations, the takings claim is not ripe and "the district court must dismiss it for lack of subject matter jurisdiction since the owner has failed to establish an Article III 'case or controversy.'"  *Id.*  Accordingly, Plaintiffs have failed to state any claim upon which relief could be granted for an unconstitutional taking.

Plaintiffs' "Count Eighteen" presents as a cause of action "RACIAL AND OR DISCRIMINATION WITH RETALIATION."  Compl. (Doc. 1) at ¶ 236.  This nomenclature, of course, sounds in Title VII of the Civil Rights Act of 1964.  Indeed, Plaintiffs asserted in the "JURISDICTION" portion of their complaint that their "Due Process Violation is pursuant . . . Title VII of the Civil Rights Act of 1964, as amended." *Id.* at ¶ 4.  However, to the extent Plaintiffs might have actually intended to present a viable claim for an alleged Title VII violation, they plainly have failed to do so.  An essential element of any claim of racial discrimination in violation of Title VII is that the

---

[3]  Notably, a state court interpretation of a process which will render it inadequate occurs where "the state law provided an . . . action to remedy a taking, but the state court interpreted the law as capping the property owner's damages at less than the value of what was taken."  *Agripost, Inc.*, 195 F.3d at 1231 n.13.  It follows, then, that a state court's mere disagreement with Plaintiffs' novel theory that the Commercial Bank of Ozark has waived any right to seek ejectment—that is, a mere disagreement with Plaintiffs about their ownership of the land—could not render any process provided by Alabama to remedy a taking inadequate.

alleged discrimination is in the form of an unlawful employment practice committed by an employer of the plaintiff, an employment agency, or a labor organization. *See* 42 U.S.C. § 2000e-2(a)-(c). Plaintiffs' allegations utterly fail to allege any practice or relationship which would be actionable as to any Defendant under any theory of recovery encompassed by Title VII.

If Title VII cannot be the basis for Plaintiffs' "Count Eighteen," then the court is left to try and discern the lawful basis of the claim from the confusing jumble of allegations constituting the claim. This circumstance alone violates the short and plain statement requirement of Rule 8(a) and warrants dismissal of the claim. Nevertheless, construing the claim liberally, as the court is required to do given Plaintiffs' *pro se* status, the undersigned will hazard a guess as to what Plaintiffs are trying to complain about in "Count Eighteen." In essence, Plaintiffs appear to be complaining that they received disparate treatment from the Town of Ariton due to their race.

> When the town of Ariton started its sewage project it purchased from Roger/Annette Phillips and Ed Jones who are white. Certainly, they knew the municipalities laws or should have as to their action then as to now. When it came time to situate a same circumstances with Plaintiffs who are black the Town disregarded the law and their previous actions. Their disregard has continued over years. Therefore when the Plaintiffs taken action to stop their aggression, they circumvented the law again and as the easement reads, forever. The easement is stipulated as permanent. This would lead one to see their action given to whites is the total opposite when dealing with blacks. Not only is it different they have continued it for many years without recourse. The circumstances are the same, using property for public use. . . . We believe and assert that it is because we are black and the others are white or that we were treated different under similar circumstances. . . .
>
> Their only opposition to the blacks requesting the same service as given to whites was we will do what we want and you better not stop us or

else we will sue you and lock you up. Further to this thought their action was always assisted by police force. In any logic their action to others were different under the same or similar circumstances whether it was a black or white issue or just preferential treatment: Surely, when the Town started collecting fees from the sewage pumping station the Plaintiffs were in possession and had undisputed legal title. Or even When the Town of Ariton placed the pumping station on the said land title and possession was held in Plaintiff(s) name, undisputed.  Although now as the final straw has risen the Plaintiffs see the same legal possession and rights to legal title with claims for title and possession that are barred as a matter of law. As a matter of another fact, the Plaintiffs presented this argument in their answer, defense, and counterclaim on February 24th, 2014 in CV-2014-900012.  Ironically to those assertion the Defendants The Commercial Bank of Ozark has not once disputed those assertions and neither can they. The simple matter is, they fail to counterclaim surrounding the same facts at issue here that were adjudicated on the merits, by a court of competent jurisdiction, among the same parties, for the same property the pumping station is placed on.

Compl. (Doc. 1) at ¶ 238.   Although Plaintiffs never articulate, apart from the inapplicable provisions of Title VII, precisely what provision of law entitles them to relief given these factual allegations, Plaintiffs' claim is nevertheless fatally encumbered under any imaginable theory of relief.  First and foremost, Plaintiffs cannot plausibly claim to be similarly situated to other landowners whom it is alleged the Town compensated for use of their land where Plaintiffs have conceded that the Commercial Bank of Ozark was the "title holder to said property" in "Dale County Probate record." The easement granted by the Bank to the Town, which was attached to Plaintiff's complaint, makes clear that the Town did indeed offer consideration to the Bank in exchange for the grant of the easement.  *See* Compl. Ex. A (Doc. 1-1) at 1.  As such, any assertion that Plaintiffs' claim to the land and title was undisputed is patently conclusory and implausible.  The mere fact that the Bank has not "disputed" Plaintiffs' attenuated

theory of waiver and continued ownership of the property simply does not place Plaintiffs in the same position as lawful property owners whom the Town decided to compensate, as it did the Bank, for its use of the owners' properties.  As such, rather than plausibly alleging some actionable form of racial discrimination or disparate treatment, the complaint only establishes that the Town determined whom it would compensate based not upon race but, rather, who actually owned the property and was entitled to such compensation.  Plaintiffs have failed to state any claim upon which relief could be granted for racial discrimination as alleged in Count Eighteen.

Plaintiffs also appear to assert a federal cause of action for "DECLARATORY JUDGMENT ACT USC 28 AS TO ALL PARTIES."  Compl. (Doc. 1) at ¶ 17.  Plaintiffs appear to seek a declaratory judgment from this court concerning the dispute which is ongoing in the state courts.  They seek a declaration that, *inter alia*, the Commercial Bank of Ariton "should be prohibited and enjoined of their action to give easement until the dispute of this property is settled in a court of law and or equity OR made to pay just compensation for their use[;]" that "legal rights of the dispute of property interest and the deeds has not been adjudicated and therefore the Defendants action was illegal and improper[;]" that "Plaintiffs are subject to legal title of this property under theory of a barred claim of title and right to possession[;]" that the Town trespassed on their property; that both the Federal and Alabama Rules of Civil Procedure dictate that, where a claim is barred, "there is no relief that can be granted in a future lawsuit[;]" and that the Bank's ejectment action is barred because it failed to assert that claim as a counterclaim

14

in Plaintiff's lawsuit two and a half years ago and that, therefore, the Bank had no right to grant an easement to the Town.  Compl. (Doc. 1) at ¶¶ 20-26.

The Declaratory Judgment Act does not require a court to exercise jurisdiction to declare a party's rights or legal obligations.  *See* 28 U.S.C. § 2201(a) (emphasis added) ("any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and legal relations of any interested party seeking such declaration").  Thus, the Declaratory Judgment Act does not provide an independent basis for federal court jurisdiction.  *See Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989).  Rather, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  This court is vested "with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [this court's] grasp."  *Id.* at 289.

This court should decline Plaintiffs' request to enter any declaratory judgment in this matter.  As set forth above, Plaintiffs have wholly failed to state any federal cause of action for which any relief could be granted.  Stripped of any pretense that Plaintiffs have presented viable federal constitutional claims, the complaint consists entirely of vague, confusing, and conclusory allegations in support of state law torts.  It follows, then, especially considering that a substantial portion of Plaintiffs' request for declaratory judgment involves the application of principles of Alabama law concerning waiver and

bars to claims stemming from prior state court suits, that the state courts are the most appropriate forum to go about the process of declaring the parties' rights in the disputed property or otherwise adjudicating Plaintiffs' claims.  This is especially so considering that, according to the complaint, state law actions concerning the subject property remain pending.  Given all of the above, there can be no justifiable conclusion that the issues raised by Plaintiffs in their complaint are fit for resolution in this court via a declaratory judgment.

The final arguably federal cause of action articulated in the complaint is "Count Two," which is styled "STATUTORY INJUNCTIVE RELIEF."  Compl. (Doc. 1) at ¶ 32.  Plaintiffs allege that the "Constitution is statutory in nature under 5th Amendment," and further that the Alabama Constitution and provisions of Alabama Code entitle him to some sort of injunction prohibiting the Town from making use of its easement "until just compensation is given to the Plaintiff(s) for their use of the said property as contemplated by the 5th Amendment of the U.S.C."  *Id.* at ¶¶ 35, 39.  Plaintiffs have failed to state any claim upon which relief could be granted.  Plaintiffs do not cite to any viable federal statute authorizing this court to enjoin the Town and, more importantly, as the undersigned has already discussed, Plaintiffs have failed to state any claim for a constitutional taking for which any relief could be granted.

As set forth above, Plaintiffs have failed to state any federal cause of action for which any relief could be granted and, as such, all purported claims over which this court might have exercised federal question jurisdiction are due to be dismissed.  However, in

16

addition to Plaintiffs' federal claims, the complaint purports to allege separate state-law claims for including "civil trespass" (Count Three), "illegal conversion" (Count Four), "negligence" (Count Five), "wantonness" (Count Six), "intentional infliction of emotional distress" (Count Seven), "aiding and abetting tort of outrage" (Count Eight), "nuisance" (Count Nine), "civil conspiracy" (Count Ten), "tortious interference with a business or contractual relationship" (Count Eleven), "illegal ejectment" (Count Twelve), "negligence per se" (Counts Thirteen and Fourteen), and "inverse condemnation" (Count Sixteen).   While it appears that Plaintiffs' state law claims are likely encumbered with the same pleading defects afflicting their federal claims, the undersigned believes that this court should decline to exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(c)(3) rather than attempting to further parse the allegations of claims over which this court lacks original jurisdiction.   Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

        At bottom, this is a dispute about a foreclosure on private land by a private bank and what remedies are available to the concerned parties in the aftermath of the foreclosure.  Furthermore, as conceded in the complaint itself, this dispute has been playing out in numerous iterations in the state courts over a period of years.  Plaintiffs have attempted numerous times to improperly obtain a federal forum to air their grievances with the ongoing proceedings in the state courts.  This court has repeatedly

been required to admonish Plaintiffs for their improper efforts to remove various state court proceedings to this court.  Indeed, United States Chief District Judge Keith Watkins recently issued an order enjoining Plaintiffs from attempting to remove state court actions or filing direct suits in this Court without first following certain procedures to ensure pre-filing screening of the action.  *See* Order (Doc. 12) at 5-9, *The Commercial Bank of Ozark v. Lorenzo Pearson and Clarissa Pearson*, Civ. Case No. 1:15-cv-073-WKW (entered June 10, 2015).[4]  Although this case was filed prior to Chief Judge Watkins' order, this action should fare no better at obtaining a federal forum for Plaintiffs' predominately state law issues, especially considering that Plaintiffs' federal claims, as pleaded, are overwhelmingly implausible, conclusory, and frivolous.

Apart from the court's review of Plaintiffs' complaint pursuant to § 1915(e), a few other matters are due to be addressed.  On January 23, 2015, Plaintiffs filed a "MOTION TO SUPPLEMENT HEARING ARGUMENT PURSUANT TO COMPLAINT AND SUBMISSIONS OF RECORDS REQUESTED PRIOR TO HEARING" (Doc. 11).  The "motion" appears to be in response to the undersigned's instruction at a hearing conducted on January 21, 2015, that Plaintiffs supplement the record with clarification of their arguments and additional information about prior and pending state court

---

[4]   In his order, Chief Judge Watkins specifically identified seven cases improperly removed to this Court by Plaintiffs.  *See* Order (Doc. 12) at 5-6, *The Commercial Bank of Ozark v. Lorenzo Pearson and Clarissa Pearson*, Civ. Case No. 1:15-cv-073-WKW (entered June 10, 2015).  Pointedly, Chief Judge Watkins found that "Lorenzo Pearson and Clarissa Pearson have abused process by repeatedly removing cases to federal court on the basis of arguments that are patently frivolous and violative of their Rule 11 certifications."  *Id.* at 8.  Plaintiffs' litigiousness is exemplified in their representation that they are self-employed *pro se* litigants.  *See* Pls' Mot. (Doc. 9-1) at 1 ("Clearly our job is pro se litigants of which has been rewarding, but very minimal in pay.").

proceedings involving the subject matter of the instant complaint.  Plaintiffs' "motion" addresses some of the matters raised at the hearing, and the undersigned has relied on some of the information in the "motion" in issuing this Recommendation.  Accordingly, Plaintiffs' "Motion to Supplement" is due to be granted.

On January 26, 2015, Plaintiffs filed a "MOTION TO SUPPLEMENT MOTION FILED JANUARY 23RD, 2015" (Doc. 12).  In this motion, Plaintiffs sought to add into the record of this case certain exhibits, consisting of orders dismissing prior state court actions due to Plaintiffs' misconduct in discovery, which were referenced in their prior "Motion to Supplement."  Plaintiffs' second "Motion to Supplement" is due to be granted.

On February 26, 2015, Plaintiff Lorenzo Pearson filed a motion to amend Plaintiffs' complaint to assert an additional claim against the Town of Ariton and Defendant Sutton for allegedly violating Lorenzo Pearson's First Amendment rights. Pl.'s Mot. (Doc. 13).  Lorenzo Pearson alleges that on February 11, 2015, he placed a "petition to impeach Mayor Jivas Sutton in the Hobo Pantry in Ariton[,] Alabama[,] with agreement of the Hobo Management."  Pl.'s Mot. Am. ¶ 6.  He further alleges that Mayor Sutton subsequently removed the petition from Hobo Pantry.  *Id.* at ¶ 7.  Lorenzo Pearson alleges that Defendant Sutton's action "was in violation of the free speech and petition clause under the 1st Amendment to the U.S. Constitution when a public citizen petition issues of public interest[,]" and that he has "been deprived of [his] right to free speech and petition included and embodied in the [F]irst [A]mendment to U.S. Constitution."  *Id.*

at ¶¶ 10-11.  Lorenzo Pearson also asserts additional state law claims of negligence and wantonness based upon the same factual allegations as his First Amendment claim.

In general, leave to amend a complaint under Rule 15(a) should be freely given where "justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave to amend is not required where amendment of the complaint would be futile.  *See, e.g., Cornelius v. Bank of America, NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (unpublished decision) ("While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile.").  In this case, Plaintiffs' proposed amendment is patently frivolous and, accordingly, leave to amend should be denied.  "At a minimum, to state a First Amendment claim, a plaintiff must allege that her First Amendment rights were impermissibly burdened in some way." *Bey v. City of Tampa Code Enforcement*, __ F. App'x __, 2015 WL 1543646, *3 (11th Cir. April 8, 2015) (unpublished decision).  Plaintiff does not allege any such impermissible burden.  First, Plaintiff's First Amendment right to conduct the activities he describes is constricted.  Plaintiff does not allege that the Hobo Pantry is a public building, space, or facility, or is otherwise government-owned.  Plaintiff does not have an unlimited right to engage in First Amendment activities on private property, including a private business, like a retail store, which is open to the public.  *Lloyd v. Tanner*, 407 U.S. 551, 569-70 (1972).  Hence, the Hobo Pantry could lawfully have precluded Plaintiff from leaving his petition.  *Id.*  Although the complaint alleges that Plaintiff left his petitions with the permission of the Hobo Pantry, the complaint does not allege that the Hobo Pantry did

not also later assent to Defendant Sutton's alleged actions in removing the petition.  In addition, Plaintiff cites to no law which authorized him to place his petition at the Hobo Pantry and which further precluded any entity from removing the petition.  Plaintiff also does not complain about the enforcement of any law which precluded him from placing his petition at the Hobo Pantry.

In any event, even assuming for the sake of argument that Plaintiff had some limited right to leave his petition at the Hobo Pantry, Plaintiff does not allege that he was harassed, arrested, fined, punished, or otherwise retaliated against by government authorities for his speech.  He does not allege that he was denied the opportunity to petition the government for redress of any grievances.  He does not even allege that he was somehow prevented or discouraged from standing in or around the Hobo Pantry and speaking to patrons or otherwise soliciting their signatures for his petition.  Rather, Plaintiff simply alleges that his First Amendment rights were violated because Defendant Sutton allegedly removed a petition which Plaintiff had left at the Hobo Pantry.  Even if one assumes that Defendant Sutton's actions could be viewed as some retaliatory move to stifle or affect Plaintiff's speech, Plaintiff does not allege that any threat, express or implied, was conveyed to him by Defendant Sutton.  Nor does Plaintiff allege even that Defendant's conduct would deter a person of ordinary firmness from exercising their First Amendment rights.  *See O'Bryant v. Finch*, 667 F.3d 1207, 1212 (11th Cir. 2011).

At most, then, Plaintiff's allegations describe something tantamount to political rivals removing each other's signs or advertisements from private property.  While such

allegations might support a claim by the owner or proprietor of the private property for a violation of his or her First Amendment rights, or perhaps even for some state-law tort in the nature of a conversion, they do not support a claim for a violation of the First Amendment rights of the persons who originally placed the materials.  In other words, Plaintiff—not having been injured or otherwise deprived of his ability to exercise his First Amendment rights—cannot assert a First Amendment violation against Defendant Sutton and, moreover, lacks standing to assert any such claim on behalf of the only arguably injured party, the  owner or proprietor of the Hobo Pantry.

Likewise, because Plaintiff has not plausibly alleged any cognizable injury attributable to Defendant Sutton's conduct, he cannot state a viable claim of negligence or wantonness related to Defendant Sutton's actions.  Plaintiff cannot complain that his property was stolen by Defendant Sutton where the complaint makes clear that he conveyed the property to and left it in the custody of the Hobo Pantry.  Because Plaintiff therefore fails to state any claim upon which relief could be granted in his motion to amend his complaint, the motion is due to be denied as futile.  Indeed, Plaintiff's motion to amend is yet another example of the combined litigiousness and ignorance of the law which Chief Judge Watkins described in his order enjoining Plaintiffs from filing further cases in this Court without pre-filing screening procedures imposed by the order.

On March 13, 2015, Plaintiff Lorenzo Pearson filed a "MOTION FOR LEAVE OF COURT FREELY GIVEN PURSUAN[T] FRCP 15(a) OR ANY OF ITS SUBPARTS TO AMEND THIS ACTION AGAINST JIVAS SUTTON

INDIVIDUALLY, AND MAYOR JIVAS SUTTON FOR AND OF THE TOWN OF ARITON ONLY" (Doc. 14).  In this document, Plaintiff appears to seek to amend his complaint only to "demand a jury trial as to all issues."  Pl.'s Mot. (Doc. 14) at 1.  Because Plaintiffs' complaint is due to be dismissed pursuant to § 1915(e)(2)(B)(ii), Plaintiffs' motion to amend his complaint to add a jury trial demand is due to be denied as futile.

On July 31, 2015, Defendants, who have not yet been properly served with Plaintiffs' complaint because the stay on service of process has remained in effect pending this court's review under § 1915(e), filed a "Motion for Leave to Take Deposition" (Doc. 20) of Defendant Ronnie Danner.  In the motion, Defendants describe Mr. Danner's serious health issues and request leave to depose him in order to preserve his testimony for use in this litigation.  Simultaneous with this motion, Defendants filed a motion (Doc. 21) requesting that the court enter an order confirming that they are not required to answer or otherwise respond to Plaintiffs' complaint despite their limited appearance for purposes of requesting leave to depose Mr. Danner.  A few days later, on August 4, 2015, Defendants filed a motion to withdraw (Doc. 23) their motion for leave to depose Mr. Danner, advising that Mr. Danner's condition had deteriorated and that he would not be able to testify at a deposition.  The next day, Defendants filed a Suggestion of Death (Doc. 24), advising that Mr. Danner passed away on August 4, 2015.  Because the undersigned is hereby recommending that Plaintiffs' action be dismissed pursuant to

§ 1915(e)(2)(B)(ii), and because of the death of Mr. Danner, Defendants' motions are due to be denied as moot.

## IV.   CONCLUSION

For the reasons stated above, the Magistrate Judge RECOMMENDS  as follows:

a.   that Plaintiffs' federal claims against Defendants be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiffs have failed to state any federal cause of action upon which relief could be granted;

b.   that Plaintiffs' state-law causes of action be DISMISSED, without prejudice, pursuant to 28 U.S.C. § 1367(c)(3);

c.   that Plaintiffs' complaint (Doc. 1) be DISMISSED;

d.   that Plaintiffs' Motion for Leave to Proceed *in Forma Pauperis* (Doc. 4) be DENIED;

e.   that Plaintiffs' Motion for Leave to Proceed *in Forma Pauperis* (Doc. 9) be GRANTED;

f.   that Plaintiffs' "MOTION TO SUPPLEMENT HEARING ARGUMENT PURSUANT TO COMPLAINT AND SUBMISSIONS OF RECORDS REQUESTED PRIOR TO HEARING" (Doc. 11) be GRANTED;

g.   that Plaintiffs' "MOTION TO SUPPLEMENT MOTION FILED JANUARY 23RD, 2015" (Doc. 12) be GRANTED;

h.   that Plaintiffs' Motion to Amend (Doc. 13) be DENIED;

i.   that Plaintiffs' second Motion to Amend (Doc. 14) be DENIED; and

j.      that Defendants' Motion for Leave to Take Deposition (Doc. 20), Motion for Order (Doc. 21), and Motion to Withdraw (Doc. 23) be DENIED as moot.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **August 26, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 12th day of August, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

25